**FILED**

  AUG 07 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN THE MATTER OF AN APPLICATION | ) | |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR A WARRANT TO OBTAIN | ) | |
| RECORDS, LOCATION INFORMATION, | ) | |
| INCLUDING PRECISION LOCATION | ) | No. 4:19 MJ 7307 SPM |
| INFORMATION, CELL SITE | ) | |
| INFORMATION, AND OTHER | ) | **FILED UNDER SEAL** |
| SIGNALING INFORMATION | ) | |
| ASSOCIATED WITH THE CELLULAR | ) | |
| TELEPHONE HAVING THE NUMBERS | ) | |
| (314) 600-5207. | ) | |

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Angie E. Danis, Assistant United States Attorney for said District, and hereby makes application to this Court for a warrant and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) and 3123, authorizing agents/officers of the Federal Bureau of Investigation and the Drug Enforcement Administration (hereinafter referred to as "investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to obtain records and location information, including precision location information, cell site location information, and other signaling information, associated with the following cellular telephone, which is further identified as follows:

**TELEPHONE NO.:** (314) 600-5207

**ESN/IMSI NO.:**    Unknown

**SUBSCRIBER:**    Unknown

**ADDRESS:**    Unknown

(hereinafter the "**subject cellular telephone**").

## I.      <u>Introduction & Relief Requested</u>

1.      The undersigned applicant for the Government is an Assistant United States Attorney in the Office of the United States Attorney for the Eastern District of Missouri, and an "attorney for the Government," as defined in Fed. R. Crim. P. 1(b)(1)(B).   Therefore, pursuant to Title 18, United States Code, Sections 2703(c) and 3122(a)(1), the undersigned may apply for an Order authorizing the disclosure of the telecommunication records and information requested herein.

2.      The **subject cellular telephone** is serviced by T-MOBILE (hereinafter referred to as "the Service Provider"). The records and information requested herein are directed at location-related information and subscriber information associated with the **subject cellular telephone**, and may include information related to when the **subject cellular telephone** is located in a protected space, such as a residence.  This application does not seek to compel or acquire the disclosure of the content of any communications.

3.      The **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), by **Marcus MOORE**, and others known and unknown.

4.      The Government makes this application upon a showing of probable cause. Attached to this application and incorporated by reference as if fully set out herein is the affidavit of Special Federal Officer Thomas Strode with the Federal Bureau of Investigation which alleges facts in order to show that there is probable cause to believe that evidence of the commission of the above-described subject offenses can be obtained by locating and monitoring the location of the **subject cellular telephone**, without geographic limitation within the United States, including

2

by obtaining precision location information (e.g., GPS information), cell site information, signaling information, and records concerning the **subject cellular telephone** for a period of forty-five (45) days measured from the date the Warrant is issued -- *i.e.*, from August 7, 2019, to September 20, 2019, 11:59 p.m. (CT).

5.      The present application requests relief in three forms.   First, the application requests relief in the form of precision location information, including GPS information, associated with the **subject cellular telephone**.    Second, the application requests subscriber records and cell site information, which does not include precision location information, associated with the **subject cellular telephone**. Third, the application requests authorization for the installation and use of pen register and trap-and-trace devices.

## II.      Precision Location Information Request

1.      The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System (GPS) information, but not the contents of any communications, associated with the **subject cellular telephone**, for a period of forty-five (45) days from the date of any warrant issued hereon -- *i.e.*, from August 7, 2019, to September 20, 2019, 11:59 p.m. (CT).

2.      The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

> (c)      Records concerning electronic communication service or
> remote computing service.--(1) A governmental entity may require

a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

(A)   obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.     The Court has jurisdiction to issue a warrant for the disclosure of precision location information, as requested herein, because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c).   Specifically, the Court has jurisdiction over the offense being investigated.

4.     Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703.   In particular, Section 2703(g) states:

Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.     Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer.   In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

### III.     Cell Site Location Information Request

1.     The Government requests a warrant directing the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type

4

of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including cell site location information, but not the contents of any communication, for the time period of thirty (30) days prior to the warrant and for forty-five (45) days from the date of the requested warrant -- *i.e.*, from August 7, 2019, to September 20, 2019, 11:59 p.m. (CT).   In particular, the Government requests the following telecommunication records and information:

(1)      subscriber information and all telephone numbers, ESN, MIN, IMEI, MSID or IMSI numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

(2)      subscriber information available for any originating telephone number;

(3)      Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls at the **subject cellular telephone**) for the above-specified time period;

(4)      cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone**

5

number, and any information on what portion of that tower is receiving a transmission from the **subject cellular telephone** number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone** number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors and orientations; and

(i)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**.

(j)      historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD) and

(k)      Internet Protocol (IP addresses) utilized by and signaled to and from the **subject cellular telephone**.

2.      The Service Provider is a service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A) which states:

6

     (c)     Records concerning electronic communication service or remote computing service.--(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record of other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity--

     (A)     obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure...by a court of competent jurisdiction....

3.     The Court has jurisdiction to issue a warrant for the disclosure of requested telecommunications records, including cell site records because it is "a court of competent jurisdiction," as defined in Title 18, United States Code, Sections 2711(3), and 2703(a), (b), and (c). Specifically, the Court has jurisdiction over the offense being investigated.

4.     Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703. In particular, Section 2703(g) states:

     Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber or customer of such service.

5.     Title 18, United States Code, Section 2703(c)(3) permits the government to obtain the requested information and records without providing notice to any subscriber or customer. In particular, Section 2703(c)(3) states: "A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer."

## IV.     Pen Register, Trap-and-Trace Request

1.      The Government's application seeks an Order, pursuant to Title 18, United States Code, Section 3122, authorizing the installation and use of pen register and trap-and-trace devices, including enhanced caller identification, as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, and including an Order authorizing the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information transmitted by the **subject cellular telephone** number further identified herein, and a trap-and-trace device, including enhanced caller identification, which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone** number, direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, for the time period from August 7, 2019, to September 20, 2019, 11:59 p.m. (CT).

2.      In making this application, the Government does not seek the contents of any communication, such that other legal process would be required.

3.      As previously outlined, the Government certifies that the information likely to be obtained through the aforesaid pen register and trap-and-trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

4.      The Government further requests that the Order direct the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, here incorporated by reference, and any other applicable service

providers, to initiate caller identification on the subject cellular telephone number listed above, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

5.     The Government further requests that the Order direct the furnishing of information, facilities, and technical assistance, as necessary, to unobtrusively accomplish the installation and use of the pen register and trap-and-trace devices, including enhanced caller identification, by the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications and any other applicable service providers, and with a minimum of disruption of normal telephone service.

6.     The Government further requests that the Order direct that the results of the pen register and trap-and-trace devices, including enhanced caller identification, be provided to the agents/officers of the investigative agency(ies) at reasonable intervals for the duration of the Order.

## V.     Changed Numbers, Compensation and Sealing

1.     The Government requests that should the subject cellular telephone and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen register and trap-and-trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

2.     The Government further requests that the Order direct that the lead investigative agency provide the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service

providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

## VI.    Sealing, Notification and Miscellaneous Considerations

1.      Pursuant to Title 18, United States Code, Section 2703, the Government requests that the Court direct that the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the following:

(1) subscriber information;

(2) length of service (including start date);

(3) the types of service utilized;

(4) instrument number or other subscriber number or identity, including any temporarily assigned network address;

(5) all available names, addresses, and identifying information, and other subscriber and service feature information;

(6) toll records including incoming and outgoing telephone numbers;

(7) credit information, billing information, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone,

for the telephone numbers being dialed to and from the aforementioned **subject cellular telephone** at reasonable intervals for the past thirty (30) days from the date of this Warrant and at reasonable

intervals for up to forty-five (45) days from the date of this Warrant -- *i.e.*, from August 7, 2019, to September 20, 2019, 11:59 p.m. (CT).

2.        Pursuant to Title 18, United States Code, Section 2703(c)(3), the Government entity or agency receiving these records or information as a result of this application and accompanying warrant and order will not provide notice to the subscriber or customer of the **subject cellular telephone**.

3.        This Court has authority under Title 18, U.S.C., Section 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

4.        In this case, such an order is appropriate because the Government seeks the warrant in part under the authority granted to this court pursuant to Title 18, U.S.C., Section 2703.   The requested warrant is related to an ongoing criminal investigation that is not public and this portion of the investigation is not known to the subjects of the investigation.   Premature notification may alert the subject(s) to the existence of the investigation. If the subjects were notified about the existence of the requested warrant, the subjects could destroy evidence.   Accordingly, there is reason to believe that notification of the existence of the warrant will seriously jeopardize the investigation, including giving the subjects an opportunity to: flee, destroy and/or tamper with evidence; change patterns of behavior; or notify confederates.   *See* Title 18, U.S.C., Section 2705(b)(2), (3), and (5).   Based on the nature and circumstances of the investigation, there is also reason to believe that notification of the existence of the warrant will result in endangering the life

11

or physical safety of an individual, or the intimidation of potential witnesses.   *See* Title 18, U.S.C., Section 2705(b)(1) and (4).

5.      Based on the foregoing, pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2) and 2705(b), the Government requests that the Court direct the Service Provider and the telecommunications service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, not to disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order, to a subscriber or lessee or to any other person, except that the provider may disclose the warrant and any Order to an attorney for the provider for the purpose of receiving legal advice.

6.      The information requested herein does not require a physical intrusion or physical trespass into any protected space.   Accordingly, it is respectively requested that the warrant authorize the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the location information described herein at any time, day or night.

7.      The Government further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

8.      In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation,

including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of Special Federal Officer Thomas Strode with the Federal Bureau of Investigation, which is attached hereto and made a part hereof, applicant requests this Court to issue a Warrant authorizing agents/officers of the Federal Bureau of Investigation and the Drug Enforcement Administration (the investigative agency(ies)), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information associated with the **subject cellular telephone**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this ___7th___ day of August, 2019.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

_____
ANGIE E. DANIS, #64805MO
Assistant United States Attorney

13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION  )
OF THE UNITED STATES OF AMERICA  )
FOR   A   WARRANT   TO   OBTAIN  )
RECORDS, LOCATION INFORMATION,   )
INCLUDING  PRECISION  LOCATION   )          No. 4:19 MJ 7307 SPM
INFORMATION,          CELL        SITE   )
INFORMATION,        AND        OTHER   )          **FILED UNDER SEAL**
SIGNALING              INFORMATION   )
ASSOCIATED  WITH  THE  CELLULAR  )
TELEPHONE HAVING THE NUMBERS   )
(314) 600-5207.                                           )

## **AFFIDAVIT**

Thomas Strode, being duly sworn, deposes and says that he is a Special Federal Officer

with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

### **Introduction**

1.   I am a deputized Special Federal Officer (SFO) with the Federal Bureau of

Investigation (FBI).   Additionally, I am employed as a Police Officer for the St. Louis

Metropolitan Police Department (SLMPD) and have been so employed for the past nine years.   I

am currently assigned to the Intelligence Division, which specializes in the investigation of violent

offenders and narcotics traffickers.   Through my training and experience, I am familiar with the

debriefing of cooperating witnesses, interviews of suspects and witnesses, and methods of

investigating violent crimes, murders and narcotics related activities.   Additionally, I have been

trained and have experience in utilizing electronic and/or cellular data including but not limited to,

telephone toll analysis, cell tower dumps/searches, call log analysis and stored cellular data.

During the past nine years as a Police Officer with the SLMPD, I have been involved in a multitude

of drug and violent crime investigations involving arrests, interviews, informant debriefings, and surveillances.   The following information is based on my personal observations, investigation, training and experience, and the observations and information provided to me by other members of the investigative team.

2.   The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses.    As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

3.   Upon information and belief, and as explained in greater detail below, the cellular Telephone bearing number **(314) 600-5207** (hereinafter the "**subject cellular telephone**"), which is being serviced by T-MOBILE (hereinafter referred to as "the Service Provider"), has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (hereinafter referred to as "the subject offenses"), by **Marcus MOORE** (hereinafter "**target subject**" or **M. MOORE**) and others known and unknown.

4.   The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

2

5.   Your affiant further states that there is probable cause to believe that the location Information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### Investigation and Probable Cause

6.   I am currently participating in an investigation with members of the SLMPD Special Operations Division, FBI, and Drug Enforcement Administration ("DEA") regarding the illegal importation and distribution of narcotics by numerous individuals involved with the 41 Delmar Crips Criminal Street Gang. Members and affiliates of this gang distribute heroin and fentanyl in Saint Louis City, as well as some areas in Saint Louis County.   Both St. Louis City and St. Louis County are located within the Eastern District of Missouri.   Members and affiliates of this gang commonly arm themselves with illegally obtained firearms and commonly utilize violence to protect their narcotics and their proceeds from narcotics sales.   Members of the 41 Delmar Crips use multiple cellular phone numbers to coordinate their narcotic transactions and commonly compartmentalize their narcotics trafficking utilizing one cellular phone for contact with buyers and one phone for contact with other distributors and/or suppliers.   Additionally, the members of this gang are known to keep multiple cellular phones, which are utilized for the purpose of selling illicit narcotics.

### Information Obtained on Target Subject

7.   In May of 2018, the investigative team became aware of **Marcus MOORE**, who is Associated with the 41 Delmar Mob, who investigators know to be involved in the distribution of illicit narcotics. This information first became available to investigators after intercepting

communication over a court-authorized wiretap of Christopher PIPES' cellular telephone. Subsequently, investigators have received further information into the illicit activities of **Marcus MOORE** from confidential sources, their own observations and investigative methods, as well as previous court authorized wiretaps into cellular phones that **Marcus MOORE** was utilizing. Furthermore, while conducting a court authorized wiretap of Christopher MOORE's cellular telephone, investigators have intercepted further pertinent communication which involves illicit criminal activity of which **Marcus MOORE** is a part.

### Telephonic Intercepts

8.   On July 25, 2019, while monitoring a court authorized wiretap of Christopher MOORE's telephone (314) 296-7379, **Marcus MOORE** contacted Christopher MOORE, at approximately 1011 hours, from the **subject cellular telephone,** per session number 4403. The following is a transcript of a portion of that call:

> C. MOORE: Hello?
>
> M. MOORE: What's up with it, cuz?
>
> C. MOORE: Hello?
>
> M. MOORE: What's cracking?
>
> C. MOORE: What's up?
>
> M. MOORE: Shit, where you at?
>
> C. MOORE: Shit, I'm at Teneisha crib. [Aside: What the fuck?]
>
> M. MOORE: Oh, you. What you say? You putting your shit together?
>
> C. MOORE: Oh, yeah.
>
> M. MOORE: What you trying to do? Where you at? What you in now? The truck?

4

9.   It is the opinion of the investigative team, based on their knowledge of **Marcus MOORE** and Christopher MOORE, their knowledge of members and associates of the 41 Delmar Mob, their own training, and previous experiences that **Marcus MOORE** inquired as to the location of Christopher MOORE, who informs him he is at Teneisha's house. It should be noted that the investigative team is of the belief that Christopher MOORE is referring to his sister, Teneisha MOORE's residence. **Marcus MOORE** subsequently asks Christopher MOORE if he is "putting his shit together." Investigators believe that **Marcus MOORE** was asking Christopher MOORE if he was putting a quantity of narcotics together, to which Christopher MOORE states that he is.

10.   On July 31, 2019, while monitoring a court authorized wiretap of Christopher MOORE's telephone (314) 296-7379, **Marcus MOORE** was contacted by Christopher MOORE, at approximately 1403 hours, on the **subject cellular telephone,** per session number 5389. The following is a transcript of a portion of that call:

M. MOORE: You been fucking with that nigga, OZ ass?

C. MOORE: Who?

M. MOORE: I mean, not OZ, but Dub.

C. MOORE: Nah, shit. I was just, he just wanted me to [UI] it for him.

M. MOORE: Right, ah ok. [UI[ that going. Take all tha shit in. Bread and them say that shit cool?

C. MOORE: Yeah.

M. MOORE: Yeah, Bread told me it was cool though, too though.

C. MOORE: Oh shit, I was gonna give it to they ass. See what the fuck they do with it.

5

M. MOORE: They paid you back yet?

C. MOORE: Yeah, they paid me. I ain't gonna give they ass too much.

M. MOORE: Right. Alright, I'm out in Baden, man.

11. It is the opinion of the investigative team, based on their knowledge of **Marcus MOORE** and Christopher MOORE, their knowledge of members and associates of the 41 Delmar Mob, their own training, and previous experiences that **Marcus MOORE** was inquiring about several third parties to Christopher MOORE. When he asked if he was dealing with Dub, the investigative team is of the opinion that he was referring to Christopher MOORE selling him quantities of narcotics. Furthermore, when **Marcus MOORE** asked if "Bread told him it was cool," the investigative team is of the belief that he was asking Christopher MOORE if Bread was satisfied with the quality of narcotics. Furthermore, **Marcus MOORE** asks Christopher MOORE if they paid him back yet, to which Christopher MOORE states that they had and that he wasn't going to give them too much. The investigative team believes this portion of the conversation is indicative that Christopher MOORE had fronted a supply of narcotics to Bread and that Bread had paid him back. Furthermore, when Christopher MOORE states that he wasn't going to give them too much, the investigative team believes he is informing **Marcus MOORE** that he was not going to provide Bread too large of a quantity of narcotics since it was being fronted.

12. Based upon the foregoing, I believe **Marcus MOORE** is utilizing the **subject cellular telephone** in efforts to communicate with **Christopher MOORE**, as well as other members and associates of the 41 Delmar Mob in an effort to conduct and discuss illicit, narcotic related activity.

13. The investigation has clearly demonstrated that the **subject cellular telephone** is

being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 846 and 841(a)(1) (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

14.     Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding

7

cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.   Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.   Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.     Wireless providers also maintain business records and subscriber information for particular accounts.   This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.     Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data.   In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data.   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers.   Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

15. In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement

agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

16. None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.   Furthermore, the criminal conduct being investigated is not limited to the daytime.   Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

17. The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

**<u>Conclusion</u>**

18. Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy.    There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Sections 846 and 841(a)(1).

_____
DATE

_____
Thomas Strode
Special Federal Officer
Federal Bureau of Investigation

Sworn to and subscribed before me this _____ day of August, 2019.

_____
SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

11